M. M. RANDOLPH and another v. W. H. HUGHES and others.

## Wills, reprobate of—Caveat.

1. Where a script has been proved by the executor without citation or notice to those interested in the decedent's estate, they are entitled to have the probate set aside, and, to an order for reproponding the will, if applied for within a reasonable time after notice of the former probate, to the end that its validity may be inquired into; and under the present statute, the application need not set forth the grounds upon which the script is impeached.

2. The law relating to the method of procedure in entering a *caveat*, and the decisions bearing upon the question, commented on by SMITH, C. J.

(*Armstrong* v. *Baker*, 9 Ired., 109; *McNorton* v. *Robeson*, *Ib.*, 256; *Moss* v. *Vincen*, 2 Car. L. R., 414; *Jeffreys* v. *Alston*, *Ib.*, 364; *Ralston* v. *Telfair*, 1 Dev. & Bat., 482; *Etheridge* v. *Corprew*, 3 Jones, 14; *Syme* v. *Broughton*, 86 N. C., 153; *King* v. *Kinsey*, 71 N. C., 407, cited and approved).

MOTION to set aside the probate of a will, heard at Spring Term, 1882, of NORTHAMPTON Superior Court, before *Bennett J.* The court refused the motion, and the defendants appealed.

*Mr. R. B. Peebles,* for plaintiffs.
*Messrs. Mason, Bowen, Calvert* and *Batchelor,* for defendants.

SMITH, C. J.    The receipt, in form of and purporting to be the will of Samuel Calvert, on the 2d day of February, 1882, was produced before the probate judge by the executor, W. H. Hughes, and proved without citation or notice to the heirs-at-law or next of kin of the deceased, and letters testamentary issued. On the 4th day of the next month two of his children, (Margiana M. Randolph and Eliza C. Barrow) appeared in said court and entered their caveat to the probate, and gave bond as required by law to secure the costs incurred, in case of their failure to prosecute their suit with effect.

The probate judge thereupon issued his order to the executor

to suspend all further proceedings, except for the collection of debts and the preservation of the estate, until the issue can be decided.

After service of a copy of this mandate, the executor gave notice to the caveators of his intended application, and on the 30th day of the same month moved the probate judge to dismiss the proceeding upon which the mandate issued to him was based, on the ground that it was not based upon any facts set forth in a petition supported by affidavit or otherwise, and for the further reason that no facts are set out in the mandate or citation to raise an issue as to the valid execution of the script. This motion was denied, and on appeal renewed, and denied in the superior court by the judge, the devisees uniting with the executor after becoming parties, and from this ruling the appeal brings the case to this court for revision.

The only inquiry to which we are requested to respond is as to the regularity and legal sufficiency of the method of proceeding adopted to obtain a repropounding of the instrument, to the end that an issue may be raised and submitted to the jury in regard to its validity.

Under the former practice, a petition contained a verified statement of the facts upon which application was made in the county court (in which the jurisdiction was vested) for an order setting aside the *ex-parte* probate and directing the instrument to be again offered for probate, in order that the contestants might have an opportunity of being heard in opposition; and it should be made to appear, in the language of Chief-Justice RUFFIN, delivering the opinion in *Armstrong* v. *Baker*, 9 Ired., 109, that, " by allowing it (the probate) to stand, it would be a prejudice to persons who would succeed to the property if there were no will, and who can show that there is no will, if allowed the opportunity?" and that this is " the sole foundation for recalling a probate." The same judge declares again, in *McNorton* v. *Robeson, Ib.,* 256, that such an application " must rest on merits," and that " it cannot be granted unless it be shown that

the former proceeding resulted wrong, and that the interest of these persons (not parties to the former proceedings) was not duly defended by those who undertook it," and were parties. *Moss* v. *Vincent,* 2 Car. Law Rep., 414; *Jeffreys* v. *Alston, Ibid.,* 634. Yet the authorities as unequivocally assert the right of persons interested in a decedent's estate, when the will has been proved without citation or notice to any of them, to require a recall of the probate and an order for repropounding the script, unless lost by laches and unreasonable delay in its enforcement.

Discussing the two methods of proving the instrument, an early writer on the subject says: "The difference of form worketh this diversity of effect, namely, that the executor of the will, proved in the absence of those who have interest, may be compelled to prove the same again in due form of law." Swinb. on Wills, 449. To the same effect is the law laid down by other authors. 1 Williams, Exrs., 193; *Lovelace* v. *Mills,* 23 Law Lib., 409.

In *Bell* v. *Armstrong,* 2 En. Eccl. Rep., 139, Sir JOHN NICHOLS declares that "the next of kin, *as such merely,* are entitled to call for proof *per testes* of any decedent's will of *common right.*"

The same principle is announced by DANIEL, J., delivering the opinion of the court in *Ralston* v. *Telfair,* 1 Dev. & Bat., 482, and by PEARSON, J., in the later case of *Etheridge* v. *Corprew,* 3 Jones, 14, wherein the matter is elaborately examined, and from the opinion in which case we quote:

"As a matter of common justice," he remarks that "no one should be deprived of his rights without an opportunity of being heard. Hence no order, sentence or decree made *ex-parte* is conclusive, and all persons affected by it are entitled, *of common right,* to have it set aside."

Again, "the next of kin are entitled, *of common right,* to have such probate set aside, so as to give them an opportunity of contesting its validity, and having a probate *per testes,* or by the verdict of a jury. *The right of the next of kin may be acted*

*upon at any time, unless it be forfeited, which may be done in two ways, i. e., by acquiescence or by unreasonable delay after notice of the former probate."*

After pointing out the distinction between a probate wholly *ex-parte,* and a probate when some of the next of kin, but not all, have been cited, in reference to the right of such as were omitted, he proceeds as follows: "It would seem, therefore, to result that, upon its being made to appear that the applicants are interested in the estate, if the will is not established, and the probate has been without notice to any one, they are entitled to a trial of the issue of the validity of the script, *without showing the grounds on which it is impeached,* unless the right has been lost by laches and delay."

Without undertaking to reconcile the rulings in the earlier and later cases referred to, or to lay down the rule of practice to be observed in the assertion and enforcement of this right in the next of kin, it is sufficient to say, that the caveators seem to have strictly observed the requirements of the statutory enactments now in force, and regulating the method of procedure. "At the time of application for the probate of any will, or *at any time thereafter,* as prescribed by law, any person entitled under such will, or interested in the estate, may appear in person or by attorney, before the probate court, and enter a *caveat* to the probate of such will." C. C. P., §446. The next section declares that upon the giving bond with sufficient surety in a prescribed sum to cover the costs, if they shall be adjudged to pay such, "the probate judge *shall transfer* the cause to the superior court for trial," and it is directed that citation issue to all parties in interest in the state, and publication made for such as are nonresident, "to appear at the term of the superior court to which the proceeding is transferred, and to make themselves proper parties to the said proceeding if they choose."

Section 448 directs the issuing of the order, as was done in this case, to the executor restraining him from further action, except to preserve the estate and collect debts until the issue is determined.

The caveators have done everything that the law requires to enable them to bring the script to a contest, and make opposition to its probate.

It is not controverted that the caveators are the children of the decedent, and entitled to share in his estate, if he died intestate; and their relationship, when no negligence or unreasonable delay in entering the caveat can be imparted, seems to be the only matter open to dispute, and to be preliminarily disposed of, when the application is made to the probate court. The exercise of this diligence may be involved in the qualifying words, " as prescribed by law," which follow those conferring the right to enter the caveat, " at any time " after the *ex-parte* probate. It is noticeable that the executor is not divested of all his representative powers; nor is the first probate vacated absolutely, when the issue touching the will is made up to be tried; nor is there a necessity, meanwhile, for the appointment of an administrator, *pendente lite.* The functions of the executor are suspended only until the controversy is ended, and he still is required to take care of the estate in his hands, and may proceed in the collection of debts due the deceased. *Syme* v. *Broughton,* 86 N. C., 153. This confirms the construction of the statute, which authorizes the entry of the *caveat,* without the formal allegations and proof necessary under the former practice.

We therefore uphold the ruling of the court and affirm the judgment.

Pursuing the course adopted in *King* v. *Kinsey,* 71 N. C., 407, this will be certified to the superior court and a *procedendo* ordered to be there issued to the probate court, directing the issue to be made up and transmitted for trial to the superior court.

PER CURIAM. Judgment accordingly.